# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS A. SIMONIAN, | ) |
|           Plaintiff, | ) Case No. 10-1260 ) ) Magistrate Judge Sidney I. Schenkier |
| v. | ) ) |
| IRWIN INDUSTRIAL TOOL COMPANY, | ) ) ) |
|           Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Thomas A. Simonian initiated this *qui tam* action against Irwin Industrial Tool Company ("Irwin") on February 24, 2010, alleging false patent marking in violation of 35 U.S.C. § 292(a) (doc. #1: Compl.). On September 2, 2010, Mr. Simonian filed the instant motion to amend his complaint to add Newell Operating Company ("NOC") as a defendant (doc. # 43: Pl.'s Mot. to Amend). For the reasons set forth below, the motion to amend the complaint is denied.

### I.

We begin with the procedural history of this case and two related cases.

### A.

Mr. Simonian filed the *qui tam* complaint against Irwin pursuant to 35 U.S.C. § 292, accusing Irwin of "marking certain of its Shur-Line branded products" with expired United States Patent No. 2,810,148 ("'148 Patent"), "including, for example, but not limited to, the following products: Shur-

---

[1] On September 16, 2010, by consent of all parties and pursuant to Local Rule 73.1(b), the Executive Committee reassigned this case to this Court for all proceedings, including entry of final judgment (doc. # 50).

Line Paint Edger and Shur-Line Trim and Touch Up Pads" (doc. # 1: Compl. ¶¶ 2, 8).[2] Mr. Simonian alleges that Irwin is a subsidiary of Newell Rubbermaid Inc. ("Newell"), that Shur-Line is an operating division of Irwin, and that Irwin makes and sells the Shur-Line Paint Edger and Shur-Line Trim & Touch-Up Pads (Compl. ¶¶ 6-8, 16). The parties do not dispute that the '148 Patent expired over thirty-five years ago, on March 30, 1974, and that as of the filing date of the complaint, it was being marked on the Shur-Line Paint Edger and Trim & Touch-Up Pads.

On April 30, 2010, Irwin filed a motion to dismiss (doc. # 19), arguing, in part, that Mr. Simonian lacked Article III standing and that Irwin was not the proper defendant (doc. # 41: 8/27/10 Order at 1). Although Irwin admits that Shur-Line's website states that it is a division of Irwin, in support of the motion to dismiss Irwin offered evidence that in fact Shur-Line is an operating division of NOC, which in turn is a subsidiary of Newell (08/27/10 Order at 2). In his response to Irwin's motion to dismiss, Mr. Simonian indicated that if the district court determined that Irwin was not a proper defendant in this matter, he would request leave to amend his complaint to add the proper defendants (doc. # 34: Pl.'s Resp. to Mot. to Dismiss at 16 n.7). On August 27, 2010, the district court denied the motion to dismiss, holding that Mr. Simonian had standing and that the complaint met the federal notice pleading standards (8/27/10 Order at 2). The court rejected the argument that Irwin was not the proper defendant, on the ground that the court would not consider on a motion to dismiss the extrinsic evidence that Irwin offered on that point (*Id.* at 2-3).

Despite surviving Irwin's motion to dismiss, Mr. Simonian filed the instant motion for leave to amend the *qui tam* complaint on September 2, 2010. In his proposed amended complaint, Mr.

---

[2]Plaintiff refers to the "Trim and Touch Up Pads," while defendant uses an ampersand for "Trim & Touch Up Pads." As these terms refer to the same item, we use the more abbreviated "Trim & Touch Up Pads" in this opinion.

Simonian seeks to add NOC as a defendant, alleging that NOC and Irwin are both subsidiaries of Newell, and that Shur-Line is an operating division of both Irwin and NOC, which both make, market, and sell a full line of paint application and paint-related products under the Shur-Line brands, including but not limited to the Shur-Line Paint Edger and the Shur-Line Trim and Touch Up Pads (Mot. to Amend, Ex. A, proposed Amended Compl. at ¶¶ 5-10). Further, Mr. Simonian alleges that defendants have sold and continue to sell these products which are falsely marked with the '148 Patent (*Id.* at ¶¶ 2, 13). No written or oral discovery has taken place yet in this case (Mot. to Amend at 2).

**B.**

On February 17, 2010, one week before the instant case was filed, FLFMC, Inc., filed suit against Ace Hardware Corp. in the Western District of Pennsylvania, *U.S. ex rel. FLFMC, LLC v. Ace Hardware Corp.*, No. 10 C 229 (W.D. Pa), accusing Ace Hardware of violating Section 292 by falsely marking certain products because they "manufacture, sell, offer to sell, and/or advertise products marked with the '148 patent, including but not limited to, the product referred to as the Trimline Edger" (Def.'s Resp. at 2, 6; Def.'s Resp., Ex. 4, FLFMC Am. Compl. at ¶ 12). On or about September 3, 2010, FLFMC agreed to settle with Ace, NOC, and Newell (Def.'s Resp. at 6). As part of the settlement agreement, FLFMC amended its complaint to include NOC and Newell as defendants on September 16, 2010, alleging that Ace "purchases and distributes certain products marked with the '148 patent from the Newell Defendants' Shur Line business through a private labeling agreement" (Def.'s Resp. at 6; FLFMC Am. Compl. ¶¶ 13-14). The settlement agreement states that:

3

> For purpose of this release, "Released Claims" shall include any and all claims, demands, losses, damages, debts, liabilities, accounts, obligations, costs, expenses, compensation of every kind and nature whatsoever, liens, claims, suits, actions, and causes of action, which arise under federal statute 35 U.S.C. § 292 with respect to the Expired Patents and any Newell Product marked with one or more of the Expired Patents, either known or unknown, whether or not they were or could have been asserted in the FLFMC/Ace Action, the Shur-Line Action, or relate to the subject matter of those Actions, anticipated or unanticipated, in law or in equity, which the Relator and the United States ever had, now has, or may hereafter have, by reason of any matter, cause or thing whatsoever accruing, occurring, or arising at any time before or through Release Period. For avoidance of doubt, ***the Released Claims include any Section 292 liability with the Expired Patents [defined to include the '148 Patent] and any Newell Product marked with one or more of the Expired Patents***, arising from any advertising by Newell, its direct and indirect customers, and those customers who purchase or have purchased Newell Products through a private labeling program, including, but not limited to, Ace.

(FLFMC Settlement § 6(e)) (emphasis added). Notice of the settlement was sent to the United States authority with responsibility for *qui tam* actions, and on September 27 and 29, 2010, the authority informed counsel that the United States would not object to the settlement (Def.'s Resp. at 7). Upon the parties' stipulation, the FLFMC case was dismissed with prejudice on October 1, 2010 (*Id.* at 2, 7).

### C.

On August 10, 2010, another *qui tam* plaintiff, Clip Ventures, brought suit in the Northern District of California against NOC, alleging that NOC violated Section 292 by falsely marking its Shur-Line Paint Edger with the '148 Patent (Def.'s Resp. at 2; Def.'s Resp., Ex. 7, Clip Ventures Compl.). *See Clip Ventures, LLC v. Newell Operating Co., LLC*, No. 10 C 3495 (N.D. Cal.). The Clip Ventures Complaint alleged that NOC makes and sells Shur-Line Paint Edgers that are marked with the expired '148 Patent (Clip Ventures Compl. ¶¶ 11, 13-14).

4

On or about September 23, 2010, Clip Ventures and NOC entered into a settlement agreement with a release that was substantially the same as the release in the FLFMC Settlement (Def.'s Resp. at 8-9). On September 27 and 29, 2010, the United States authority with responsibility for *qui tam* actions informed counsel that the United States would not object to the Clip Ventures settlement (*Id.* at 9).[3] After notice to the United States authority, the parties stipulated to dismissal of the Clip Ventures case with prejudice on September 29, 2010.

## II.

Irwin argues that Mr. Simonian's motion to amend should be denied (a) because amendment would be futile, and (b) because Mr. Simonian unduly delayed filing the motion to amend, and as a result of the delay NOC would be prejudiced by the amendment. Motions for leave to file an amended complaint are governed by Rule 15(a) of the Federal Rules of Civil Procedure. *Id.* Rule 15(a) provides that after the twenty-one day period following the initial service of the complaint, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires." *Id.* at 15(a)(2). "Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (internal quotations omitted). We follow the law of the regional circuit in deciding whether to grant the motion to amend, *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1372 (Fed. Cir. 2004), but Federal Circuit law governs our

---

[3]The parties have not provided this Court with further details of the United States' decision not to object to the Clip Ventures or FLFMC settlements.

5

interpretation of the False Marking Act, 35 U.S.C. § 292, which "implicates an issue of substantive patent law." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1377 (Fed. Cir. 2010).

### III.

Irwin argues that allowing Mr. Simonian to add NOC to his complaint would be futile because FLFMC and Clip Ventures have *qui tam* priority over Mr. Simonian, and the United States has released NOC from all liability stemming from the marking of Newell products with the '148 patent (Def.'s Resp. at 10). An amendment is futile if the plaintiff's amended complaint would not survive a dispositive motion. *See Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007) (amendment would be futile if the amended claim would not survive summary judgment at the close of discovery) *see also Connetics Corp. v. Pentech Pharms., Inc.*, No. 07 C 6297, 2009 WL 1089552, at *2 (N.D. Ill. Apr. 16, 2009) (amendment is futile if the proposed amended complaint would not survive a motion to dismiss).

To determine whether Mr. Simonian's proposed amendment to his complaint is futile, we must first review the requirements for stating a Section 292 claim. Section 292 provides that "[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented for the purpose of deceiving the public" shall be fined for that offense. 35 U.S.C. § 292(a). Marking an article with an expired patent may constitute false patent marking under Section 292. *See Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1361 (Fed. Cir. 2010).

The false marking statute is one of four *qui tam* statutes remaining on the books, which were all enacted over a century ago. *See Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 768 n. 1 (2000). *Qui tam* laws permit private citizens (called "relators") to file

enforcement actions on behalf of the government, in return for a reward for obtaining a money judgment in the government's favor. *Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 532 (7th Cir. 2008). Under false marking the statute, "[a]ny person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." 35 U.S.C. § 292(b).

Irwin argues that amending Mr. Simonian's complaint would be futile because FLFMC filed its Section 292 suit before Mr. Simonian filed the instant lawsuit, and the United States has settled all claims related to the false marking of any Newell product with the '148 Patent. Mr. Simonian has stipulated to the dismissal of his claims as to the false patent marking of the Shur-Line Paint Edger (doc. # 61: Pl.'s Reply at 2, n. 1).[4]

Nevertheless, Mr. Simonian contends that his Section 292 claim as to the Shur-Line Trim & Touch Up Pads is valid because neither the FLFMC nor the Clip Ventures complaint accused this product of violating the False Marking Act (Pl.'s Reply at 1-2). For the reasons that follow, we disagree.

The releases in the settlement agreements in the FLFMC and Clip Ventures cases plainly cover both NOC and the products that are the subject of Mr. Simonian's proposed amended complaint. In the settlement agreements, the United States released "any and all claims . . . which arise under federal statute 35 U.S.C. § 292 with respect to the Expired Patents and any Newell

---

[4]While the parties reason that a "first to file" requirement would lead to the dismissal of a Section 292 claim based on the Paint Edger, courts within this Circuit are split as to whether Section 292 carries with it a first-to-file requirement. *See Simonian v. Quigley Corp.*, No. 10 C 1259, 2010 WL 2837180, at *2 (N.D.Ill. July 19, 2010) (holding that despite absence of explicit first-to-file provision as in False Claims Act, Section 292 "contemplates only a single action brought by a private individual on behalf of the United States . . . . [M]ultiple private plaintiffs cannot do so on the government's behalf."); *cf. Simonian v. Hunter Fan Co.*, No. 10 C 1212, 2010 WL 2720749, at *2-3 (N.D. Ill. July 8, 2010) (finding no first-to-file limitation in false patent marking case because unlike the specific first-to-file provision in the False Claims Act, no such language is contained in the False Marking Act). Based on our resolution of the motion on the ground discussed below, we need not determine whether the first-to-file rule applies here.

Product marked with one or more of the Expired Patents, either known or unknown, whether or not they were or could have been asserted . . . anticipated or unanticipated . . . which the Relator and the United States ever had, now has, or may hereafter have, . . . accruing, occurring, or arising at any time before or through Release Period." The settlement agreements define the "Expired Patents" to include the '148 Patent that is the subject of Mr. Simonian's proposed amended complaint. In addition, the agreements define Newell to include NOC – the entity whom Mr. Simonian now seeks to add as a defendant. And, the settlement agreements and releases resulted in the dismissal with prejudice of both the FLFMC and Clip Ventures suits.

In each of those cases, defendants paid a sum of money to settle the suits. While we do not know the specific amounts, in each case both the relators and the United States received monetary payments. Having received money from Newell in exchange for broad releases of any claims of improper marking by NOC or of NOC products with the '148 Patent, the United States has relinquished any right to damages from NOC in another lawsuit alleging improper marking with the same expired patent. Since Mr. Simonian sues under Section 292 as the assignee of the United States, *Stauffer v. Brooks Bros.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010), Mr. Simonian has no greater rights than would the United States to pursue an improper marking claim.

Mr. Simonian resists this conclusion by arguing that the releases are invalid insofar as they purport to release claims based on the Trim & Touch Up Pads, because the complaints in FLFMC and Clip Ventures did not call out that specific product (Pl.'s Reply at 4, 6). We recognize – as Mr. Simonian points out (Pl.'s Reply at 4) – that Section 292 imposes liability and fines on a "per article basis." *Forest Group Inc. v. Bon Tool* Co., 590 F.3d 1295, 1302 (Fed. Cir. 2009). Pursuant to this "per article" reading, Mr. Simonian argues that neither Clip Ventures nor FLFMC should have been

8

able to settle a Section 292 action based on "articles" beyond those specifically alleged in their complaint. This argument fails for two reasons.

*First*, Mr. Simonian takes too cramped a view of the FLFMC complaint, which identified the Edger as an "example" of the products that NOC improperly marked with the '148 Patent – not as the only product challenged. We note that in the proposed amended complaint (as in the original complaint), Mr. Simonian identified the Edger and the Trim & Touch Up Pads not as the sole products challenged, but as examples of the products improperly marked with the '148 Patent (Pl.'s Mot., Ex. A, ¶ 17). We have little doubt that Mr. Simonian would assert – correctly – that his claim was thus not limited to those specific products. Likewise, the FLFMC complaint challenged any product that NOC marked with the expired '148 Patent.

*Second*, even had the FLFMC complaint not alleged improper marking in so broad a manner, that would not have affected the validity of the general release that led to the settlement of that case. Contract law governs the settlement agreements, and nothing in California or Pennsylvania law, which govern the agreements, invalidates the clear and unambiguous language of the releases.[5] On their face, the FLFMC and Clip Ventures releases are garden-variety "general releases," which bar all covered claims that had accrued at the time of execution of the releases. *See, e.g., Villacres v. ABM Indus. Inc.*, 117 Cal. Rptr. 3d 398, 420 (Cal. Ct. App. 2010); *Ford Motor Co. v. Buseman*, 954 A.2d 580, 586 (Pa. Super. Ct. 2008). It is common for parties to settle contested litigation with broad releases of the type used in the FLFMC and Clip Ventures cases, which relinquished improper

---

[5] The Clip Ventures agreement is governed by California law (doc. # 59: Sealed Ex. 8, Clip Ventures Settlement Agreement ¶ 7(h)), and the FLFMC agreement is governed by Pennsylvania law (doc. # 58: Sealed Ex. 3, FLFMC Settlement Agreement ¶ 7(h)).

9

marking claims whether known or unknown, and whether or not asserted in the lawsuits. We see nothing in Section 292 that alters this basic tenet of contract law.

Mr. Simonian also suggests that the United States "likely" signed off on the FLFMC and Clip Ventures settlements based on false representations of standing and without knowledge of Mr. Simonian's suit (Pl.'s Reply at 5). Of course, we do not know what the United States knew or did not know about Mr. Simonian's suit. We note that while the False Claims Act requires a private person to advise the United States of a claim brought on its behalf, 31 U.S.C. § 3730(a)(2), there is no parallel obligation specifically imposed on a private person who brings a false marking claim under Section 292. Given that Mr. Simonian has questioned whether the United States knew of his lawsuit when it agreed to the settlements in FLFMC and Clip Ventures, we must assume that Mr. Simonian did not himself advise the United States of this suit he brought as its assignee.

That said, it is irrelevant whether the United States knew of Mr. Simonian's suit when it settled those cases. The FLFMC and Clip Ventures releases were not limited to claims that were known. The broad general releases encompassed both known and unknown claims. The claims in Mr. Simonian's complaint unambiguously fall within the broad releases in the Clip Ventures and FLFMC settlement agreements. Thus, even if the United States was not aware of Mr. Simonian's complaint, the releases extinguish any Section 292 claims against NOC for products marked with the '148 Patent. As a result, allowing Mr. Simonian to amend his complaint to assert a claim against NOC for improperly marking products with the '148 Patent would be futile.[6]

---

[6]Because of this ruling, we do not address Irwin's argument concerning Mr. Simonian's delay in seeking amendment.

10

## CONCLUSION

For the foregoing reasons, Mr. Simonian's motion to amend (doc. # 43) is denied. Prior to the next status hearing on January 25, 2011, the parties shall discuss whether Mr. Simonian's current claims against Irwin remain viable in light of the analysis in this opinion.

**ENTER:**

_____
**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: January 18, 2011**